IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| B. MICHAEL SCHNEIDER, | ) | |
| | ) | |
| Plaintiff, | ) | No.  08 C 3054 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COUNTY OF WILL; | ) | |
| PAUL J. KAUPAS, individually and | ) | |
| in his official capacity; | ) | |
| MICHAEL F. O'LEARY, individual and in | ) | |
| his official capacity; | ) | |
| Unknown Administrative Secretary(s) and | ) | |
| Unknown Correctional Officers of the | ) | |
| Will County Adult Detention Facility, | ) | |
| individually and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff filed a pro se nine-count third amended complaint based on his contention that, when serving a twenty-day criminal contempt sentence, he should have been required to serve only half of that, under the Illinois County Jail Good Behavior Allowance Act.[1] Plaintiff has brought  several claims under 42 U.S.C. § 1983: individual capacity claims against Sheriff Paul Kaupas and Warden O'Leary for "deprivation of liberty without due process of law" (Counts I and II, respectively); and a request for a permanent injunction, as a result of those defendants' alleged failure to supervise and train staff (Count IV).  Among other things, plaintiff's proposed injunction would direct defendant Kaupas to establish a training program and require the Northern District of Illinois to "institute a monitoring program" to ensure that defendants are complying with (and training their employees to comply with) the County Jail Good Behavior

---

[1] Subject to certain enumerated exceptions, a prisoner in Illinois is generally entitled to one day of good-time credit for each day of his sentence.  730 Ill. Comp. Stat. 5/3–6–3(a)(2.1).

Act. Plaintiff has also alleged several state-law claims: indemnification against Will County pursuant to 745 Ill. Comp. Stat. 10/9-102 (Count III); and individual capacity claims against defendants Kaupas and O'Leary for intentional infliction of emotional distress based on the conditions of his confinement (Counts VI and VII, respectively).[2] The three named defendants—Will County, Kaupas, and O'Leary—have filed the instant motion for summary judgment, which for the following reasons the court grants.[3]

**BACKGROUND**

The following facts are undisputed. On May 25, 2007, plaintiff was present in Will County Circuit Court for a hearing in a foreclosure action against his fiancée. Plaintiff acknowledges that "[a]t some point" during the hearing, he "stood from [his] seat and asked the Judge why he was trying to intimidate" plaintiff and his fiancée. Plaintiff also admits that he repeatedly refused to identify himself to Judge Garrison, who responded by holding plaintiff in criminal contempt, sentencing plaintiff to twenty days in the county jail. The contempt order states: "The court sentences contemnor to 20 days in the Will County Jail beginning May 25, 2007," and the mittimus directed the sheriff to hold plaintiff "until Wed. June 13, 2007, or until released by process of law, pursuant to the order of this court entered 5/25, 2007." Correctly claiming that the Illinois County Jail Good Behavior Allowance Act entitled him to a day-for-

---

[2] In addition, plaintiff has brought two claims against unknown administrative secretaries and Will County Adult Detention Facility correctional officers for deprivations of his liberty without due process (Counts V and VIII), as well as a respondeat superior claim against Will County for those deprivations by the unidentified defendants (Count IX). Because plaintiff has not identified the unknown defendants, they are dismissed.

[3] In their reply brief, defendants have moved to strike some of plaintiff's responses to their Local Rule 56.1 statement of facts. Because plaintiff's responses do not affect the outcome of defendants' summary judgment motion, their request to strike is denied as moot.

day reduction in his sentence, see 730 Ill. Comp. Stat. 5/3–6–3(a)(2.1); Schneider v. County of Will, Fed. App'x 683, 685 (7th Cir. 2010) (collecting cases for the proposition that plaintiff "was correct" that he was entitled to be released after ten days),[4] plaintiff dictated a letter to his fiancée, who then sent the letter to defendant Kaupas. Defendant Kaupas instructed his assistant to fax the letter to defendant O'Leary who, as the warden, oversaw all of Will County's jail operations.

Defendant O'Leary received the letter. Mistakenly thinking that "the best way to determine the correct release date for Plaintiff was to contact the court . . . because he believed the key was the judge's intent," he asked the records supervisor to call Judge Garrison for clarification. The records supervisor does not recall whether she in fact contacted the judge, but regardless, she informed O'Leary that she had done so. The commonly accepted practice in the Will County Adult Detention Facility was that when nothing affirmatively indicates that a prisoner is entitled to good time, that meant that the judge was ordering that the prisoner serve the full sentence. Whether or not the records supervisor indeed confirmed with the judge, her advice to defendant O'Leary was based on her understanding of the judge's unambiguous directions on the face of the documents. O'Leary's understanding was that the records supervisor had confirmed with the judge that plaintiff was not to receive good-time credit.

O'Leary then wrote to plaintiff, explaining that "[i]n examining the very detailed court orders involving your cases, it is overwhelmingly apparent that Judge Garrison's intent is to hold

---

[4] This case was previously assigned to the Hon. Wayne R. Andersen, who granted defendants' motion to dismiss the third amended complaint. In an unpublished order dated March 5, 2010, the Seventh Circuit vacated the dismissal and remanded. On August 1, 2010, Judge Andersen retired and the case was transferred to this court.

you in custody at the Will County Adult Detention Facility until Wednesday, June 13th, 2007. If Judge Garrison's [sic] had intended to allow for 'good time/behavior' the court documents would have clearly indicated such, which they did not." His request thus denied, plaintiff was released after twenty days in custody.

## DISCUSSION

### I.    Legal Standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing out the absence of a genuine issue of material fact. Once the moving party has met that burden, the nonmoving party must go beyond the pleadings and present specific facts showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

### II.   Defendants' Summary Judgment Motion

### A.    Due Process (Counts I and II)

There is substantial confusion over what plaintiff's due process claims are. Because plaintiff is proceeding pro se, the court will give him the benefit of the doubt and consider the

4

various permutations that the parties and courts have proposed. The Seventh Circuit assumed that plaintiff was alleging Eighth Amendment deliberate indifference claims premised on prison officials' failure "to give proper credit for time served," with the result that plaintiff spent "too long" in jail. See Schneider, 366 Fed. App'x at 685 ("The Eighth Amendment is violated if, through deliberate indifference, prison officials hold a prisoner too long.") (citing Burke v. Johnson, 452 F.3d 665, 669 (7th Cir. 2006), and Campbell v. Peters, 256 F.3d 695, 700 (7th Cir. 2001)). But it is unclear whether this is a situation in which a prisoner was held "too long" for purposes of deliberate indifference, and thus whether plaintiff has alleged a deprivation of a constitutional right. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that while a state may create a liberty interest protected by the due process clause, such an interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (citations omitted).

Even assuming, however, that depriving plaintiff of his good-time credit was a constitutional violation, defendants Kaupas and O'Leary are entitled to summary judgment. Defendants previously contended that they were entitled to absolute quasi-judicial immunity for the actions they undertook at the judge's direction. In reversing the district court's finding that defendants were entitled to such immunity, the Seventh Circuit explained that because determining whether defendants acted at the judge's behest is necessarily a fact-intensive inquiry, defendants could not be entitled to quasi-judicial immunity "without any competent evidence that they were acting at the direction of a judge." Id. at p. 4. Thus, according to the

5

Seventh Circuit's analysis, defendants are now entitled to summary judgment if the uncontroverted evidence shows that they were following the judge's instructions to hold plaintiff for all twenty days.

The undisputed evidence indeed shows that O'Leary was following the judge's orders. It is uncontested that he "believed the best way to determine the correct release date for Plaintiff was to contact the court . . . because he believed the key was the judge's intent," that he asked the records supervisor to call the judge and request clarification, and that the records supervisor informed defendant O'Leary that plaintiff was not entitled to good time. The records supervisor testified that she does not recall whether she in fact contacted the judge. Regardless, that would have been unnecessary, because the records supervisor also testified that the commonly accepted practice is that when nothing affirmatively indicates that a prisoner is entitled to good time, the judge's intention was that the prisoner serve the full sentence. Further, O'Leary testified that after he instructed the records supervisor to contact the court, she "represented to me, came back and reported to me, that she had contacted the court and, in fact, the sentence was to be followed the way it was—the way it read specifically, in that since the judge said that was to be the inmate's out date and gave no provision, no instructions as to whether good time should be considered." This testimony is undisputed. Also undisputed is the fact that the order did not provide for good time, that the practice was to affirmatively indicate good time if the judge intended that such a reduction be given, and that defendant O'Leary understood that the records supervisor had confirmed with the judge that plaintiff was not to receive good-time credit.

The undisputed facts therefore show that defendant O'Leary was acting at the judge's direction (or at the very least believed himself to be acting at the judge's direction) on the basis

6

of a facially valid contempt order that provided for no good-time credit to plaintiff. See Henry v. Farmer City State Bank, 808 F.2d 1228, 1239 (7th Cir. 1986) (holding that sheriff who was "acting pursuant to an official court order" was entitled to absolute quasi-judicial immunity because he was "acting in furtherance of his 'official duties in aid of the court'") (citation omitted); Mays v. Sudderth, 97 F.3d 107, 113 (5th Cir. 1996) (extending quasi-judicial immunity to sheriff's execution of a facially valid judicial order), cited in Schneider, 366 Fed. App'x at 685. Defendant O'Leary is therefore entitled to absolute immunity for his role in carrying out the judge's order and keeping plaintiff for the full twenty days.

Because there is no evidence that defendant Kaupas similarly acted under the judge's direction, he is not entitled to quasi-judicial immunity. But he does not need that protection, because there is no evidence that he was involved in enforcing the contempt order and determining the length of plaintiff's sentence. For a § 1983 claim to succeed against him, plaintiff must point to some evidence that Kaupas was personally involved in keeping plaintiff in custody, or that as a supervisor he "kn[ew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye" to it. Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001); see Whitford v. Boglino, 63 F.3d 527, 530-31 (7th Cir. 1995) (to be liable under § 1983, a supervisor must order, have personal knowledge of, or consent to the alleged violations).

Plaintiff has not pointed to any evidence that Kaupas was involved in any way other than directing plaintiff's letter to the proper person (O'Leary, who indeed handled the matter to the best of his ability). Nor has plaintiff offered evidence that defendant Kaupas had "notice of the unconstitutional conduct of [his] subordinates and fail[ed] to prevent a recurrence of such misconduct." Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969). Summary

7

judgment is thus appropriate for him as well on this claim, under which plaintiff has sought only damages. See Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) ("If [plaintiff] was seeking only damages, [defendant's] lack of personal involvement would be conclusive . . . .") (citation omitted).

Therefore, insofar as plaintiff is claiming deliberate indifference, those claims cannot survive summary judgment. Plaintiff's third amended complaint does not, however, even mention deliberate indifference. He instead styles his claims as procedural due process claims. Defendants acknowledge that "Plaintiff pleads his claims as due process violations," but nonetheless construe them as properly brought under the Eighth Amendment's cruel and unusual punishment clause based on the "well settled" proposition that "the Fourteenth Amendment applies to pre-trial detainees, where as the Eighth Amendment applies to convicted inmates." But all that means is that pre-trial detainees are "entitled to the same basic [deliberate indifference] protections under the Fourteenth Amendment's due process claims." Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010). Despite defendants' contention, post-conviction prisoners are also entitled to the protections of the Fourteenth Amendment's due process clause when they are deprived of a liberty interest. See Wolff v. McDonnell, 418 U.S. 539, 55-56 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country."); Scruggs v. Jordan, 485 F.3d 934, 938 (7th Cir. 2007) ("Prisoners do maintain due process rights.").

But even if plaintiff's claims are properly considered as procedural due process claims, they still cannot survive summary judgment. Plaintiff points to the state court judge's failure to give him a hearing on whether criminal contempt was an appropriate sanction—but plaintiff was

held in direct contempt, on the basis of his in-court actions, and thus was not entitled to a hearing. See Bloom v. Illinois, 391 U.S. 194, 209-10 (1968). Plaintiff also cites his failure to receive a hearing on whether he should receive good-time credit—but plaintiff was not entitled to that hearing either, which he would have been due only had he been afforded good-time credit and then had that credit revoked. E.g., Cochran v. Buss, 381 F.3d 637, 640-41 (7th Cir. 2004). Here, however, it is undisputed that "[i]f the judge determined that [a defendant] was ineligible for good behavior credit, then the custom and practice was that the judge would not add any notation or indication regarding good behavior eligibility" on the mittimus. It is also undisputed that nothing on plaintiff's mittimus indicated that he was entitled to good-time credit. Thus, on the record before the court, defendants had no role in <u>revoking</u> credit that was already granted to him; from the outset, the judge (however unlawfully under Illinois law) refused to grant it. A hearing on good-time credit revocation was therefore neither necessary nor appropriate.

**B.     Count IV**

Plaintiff has also advanced an official capacity claim against defendants Kaupas and O'Leary for failing to train and supervise personnel at the Will County Adult Detention Adult Detention Facility and failing "to establish constitutionally mandated policies and procedures required by the 14th Amendment." This claim is not "against the official[s] as [ ] individual[s]; the real party in interest is the entity." Wilson v. Civil Town of Clayton, Indiana, 839 F.2d 375, 382 (7th Cir. 1988).

A failure to train claim is not available, however, because plaintiff has pointed to no evidence that would permit him to show that the defendant's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to prisoner's rights. City of Canton v.

9

Harris, 489 U.S. 378, 389 (1989), cited in Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993). A failure to train claim requires that there is an obvious need for training and that supervisors know of—and have been deliberately indifferent to—an ongoing problem. Cornfield, 991 F.2d at 1327. But plaintiff has failed to offer any evidence supporting such a theory, and therefore defendants are entitled to summary judgment on this claim as well.

**C.     Counts VI and VII (Intentional Infliction of Emotional Distress)**

Plaintiff's state-law IIED claims are based on his allegations that, on June 6, 2007, defendants Kaupas and O'Leary transferred him to a new pod where he was housed in a single cell, with a closed air circulation system, accompanied by a roommate who had pled guilty to sexually molesting his children and who suffered from a severe respiratory infection. Defendants argue that they are entitled to summary judgment on these claims because, among other reasons, they are immune under the Illinois Local Government Tort Immunity Act ("Tort Immunity Act"), 745 Ill. Comp. Stat. 10/1-101 et seq.[5]

Section 4-103 of the Tort Immunity Act states that "a public employee is [not] liable for failure to provide a jail, detention, or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision, or facilities therein." 745 Ill. Comp. Stat. 10/4-103. Because it was enacted in derogation of the common law, the court construes the Tort Immunity Act narrowly. See Van Meter v. Darien Park Dist., 799 N.E.2d

---

[5] Defendants also offer two additional reasons (which the court need not reach) why summary judgment is proper: plaintiff has failed to present evidence of conditions that meet the "extreme and outrageous" standard required for IIED claims; and the undisputed facts show that they were not personally involved in the conditions that plaintiff claims caused his emotional distress.

273, 279 (Ill. 2003). Nonetheless, even a strict reading of this provision leads to the conclusion that it "specifically shields claims based on the sufficiency of detention facilities, their personnel and the supervision provided in them." Salgado v. Doe, 2009 WL 2972477, at *2 (N.D. Ill. Sept. 10, 2009). Because plaintiff's challenges fall squarely within these categories, defendants are 'immune from suit. Summary judgment is therefore appropriate on plaintiff's IIED claims based on his conditions of confinement.

**D.     Count III (Indemnification)**

Because defendants Kaupas and O'Leary are entitled to summary judgment, there is no need for indemnification. Therefore, the court also grants summary judgment on the state-law claim for statutory indemnification for the claims and defendants that are no longer part of this lawsuit.

**E.     Counts V and VIII (Unknown Defendants)**

Under Fed. R. Civ. P. 4(m), unidentified defendants must be identified and served with process within 120 days of the commencement of the action against them. That deadline has long since passed, and plaintiff has not shown good cause for his failure to identify and serve those defendants. Accordingly, the unknown administrative secretaries and Will County Adult Detention Facility correctional officers are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted, and their request to strike plaintiff's responses to their L.R. 56.1 statement of facts is denied as moot.

ENTER:     March 20, 2012

                                              **Robert W. Gettleman**
                                              **United States District Judge**

11